**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X

SEBASTIAN ARBELAEZ, LUZ ARBELAEZ,
DEBORAH ARBELAEZ, and PABLO ARBELAEZ,

                                            PlaintiffS,

        -against-                                                Docket No. 17-CV-06543

THE CITY OF NEW YORK, a municipal entity;
New York City Police Officers Detective DORIS       **COMPLAINT**
LOPEZ (Shield # 487); Police Officer RYAN
BOYLAN; Detective MACK LIPINSKI; Sergeant
BRIAN WINROW; and "JOHN and/or JANE                 **JURY TRIAL**
DOES" Nos. 1, 2, 3, etc. (whose identity are
unknown but who are known to be personnel of the
New York City Police Department), all of whom are
sued individually and in their official capacities,

                                            Defendants.
------------------------------------------------------------------- X

        Plaintiffs SEBASTIAN ARBELAEZ, LUZ ARBELAEZ, DEBORAH ARBELAEZ, and

PABLO ARBELAEZ ("PLAINTIFFS"), by their attorneys, Beldock Levine & Hoffman LLP, as

and for their complaint against the defendants named above allege as follows:

### PRELIMINARY STATEMENT

        1.      This civil rights action seeks redress under 42 U.S.C. § 1983 for injuries

PLAINTIFFS sustained from the unconstitutional conduct of defendants THE CITY OF NEW

YORK and New York City Police Department ("NYPD") police officers DORIS LOPEZ (Shield

# 487), RYAN BOYLAN, MACK LIPINSKI, BRIAN WINROW, and "JOHN and/or JANE

DOES" Nos. 1, 2, 3, etc.

        2.      On or about the morning hours of May 29, 2015, PLAINTIFFS were home asleep

in their beds when defendant police officers burst into their apartment brandishing guns and

yelling for everyone to get on the floor.  The police officers, who claimed to be executing a search warrant and looking for drugs, unlawfully detained PLAINTIFFS and destructively searched their apartment.  Even though nothing illegal was found, and there was no reasonable suspicion or probable cause to believe that PLAINTIFFS were engaged in any illegal activity, the police officers falsely arrested Plaintiffs SEBASTIAN ARBELAEZ, LUZ ARBELAEZ, and PABLO ARBELAEZ and falsely charged them with drug related offenses.  As a result of the defendant police officers' false and unlawful conduct, PLAINTIFF LUZ ARBELAEZ was imprisoned for approximately five hours, PLAINTIFFS SEBASTIAN ARBELAEZ AND PABLO ARBELAEZ were imprisoned for approximately twenty (20) hours, and plaintiff DEBORAH Arbelaez was held in custody for approximately two hours.  Plaintiffs SEBASTIAN ARBELAEZ, LUZ ARBELAEZ, and PABLO ARBELAEZ were additionally forced to return to Bronx Criminal Court approximately ten (10) times before the baseless criminal charges against them were finally dismissed.

3.     PLAINTIFFS seek (i) compensatory damages for loss of liberty, psychological and emotional distress, and other injuries caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii) costs and attorneys' fees; (iv) and such other and further relief as this Court deems equitable and just.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of PLAINTIFFS' constitutional and civil rights.

5.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFFS' claims took place.

## JURY DEMAND

7.      PLAINTIFFS demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

8.      Plaintiff SEBASTIAN ARBELAEZ ("SEBASTIAN"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

9.      Plaintiff LUZ ARBELAEZ ("LUZ"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

10.      Plaintiff DEBORAH ARBELAEZ ("DEBORAH"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

11.      Plaintiff PABLO ARBELAEZ ("PABLO"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

12.     Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York.

13.     The CITY is authorized by law to maintain a police department, and does maintain the NYPD which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

14.     Defendant police officers Detective DORIS LOPEZ ("LOPEZ") (Shield # 487), RYAN BOYLAN ("BOYLAN"), MACK LIPINSKI ("LIPINSKI"), BRIAN WINROW ("WINROW"), and Police Officers "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. ("DOES") are NYPD police officers who: unlawfully detained and frisked PLAINTIFFS without suspicion of any illegal activity; lodged false criminal charges against plaintiffs LUZ, SEBASTIAN and PABLO; and caused SEBASTIAN and PABLO to be maliciously prosecuted.

15.     Defendants LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD.

16.     At the times relevant herein, defendants LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW**

17.    Plaintiffs' counsel filed Notices of Claim on behalf of PLAINTIFFS SEBASTIAN, LUZ, and PABLO upon the CITY on December 22, 2016, within ninety days of the December 4, 2014 dismissal of PLAINTIFF's criminal charges.

18.    More than thirty days have elapsed since PLAINTIFFS SEBASTIAN, LUZ, and PABLO served their Notices of Claim and the CITY has not offered adjustment or payment thereof.

19.    This action is filed within one year and ninety days of the events giving rise to PLAINTIFFS SEBASTIAN's, LUZ's, and PABLO's state law claims.

**STATEMENT OF FACTS**

20.    LUZ ARBELAEZ resides in a three-bedroom apartment at 2416 Webster Avenue, Apt. 1S, ("the Webster Avenue Apartment") in the Bronx, where she has lived for approximately twenty-three years.

21.    On or about May 29, 2015, LUZ ARBELAEZ's three children were staying with her and looking after her because she was debilitated from having been hit by a car a few months earlier.

22.    Plaintiff LUZ ARBELAEZ occupied a bedroom, and continues to occupy a bedroom at the Webster Avenue Apartment.

23.    On or about May 29, 2015, LUZ ARBELAEZ's sons, Plaintiffs SEBASTIAN ARBEL and PABLO ARBELAEZ, occupied the second bedroom at the Webster Avenue Apartment, and LUZ ARBELAEZ's daughter, DEBORAH ARBELAEZ, occupied the third bedroom at the Webster Avenue Apartment.

5

24.     In the early morning of May 29, 2015, police officers from, without limitation, the Bronx Narcotics Unit, forcibly entered with guns drawn and destructively and unreasonably searched PLAINTIFFS' Webster Avenue Apartment.  On information and belief, some of the Individual Defendants were among the police officers involved in this incident.

25.     The entry and search were without consent, probable cause, or other legal justification as to the PLAINTIFFS.

26.     On information and belief, the police had a warrant to enter and search the apartment.  On information and belief, the warrant to enter and search the apartment was unlawful.  On information and belief, any warrant that certain defendants may have had did not authorize their unlawful conduct with regard to the PLAINTIFFS.

27.     None of the PLAINTIFFS had committed any unlawful acts to justify the conduct of the Individual Defendants towards them.

28.     LUZ was sleeping in her bedroom when police officers burst into her room, pointing guns and flashlights at her, and yelling for her to "get the fuck on the floor."

29.     LUZ was extremely frightened by the police officers, became pale, began shaking with fear, and attempted to comply with the police officers' orders.

30.     The police officers screamed at LUZ to move faster.

31.     LUZ told the officers that she was moving as fast as she could and that she was suffering and having difficulties due to injuries she had suffered from being hit by a car.

32.     The police officers responded by violently grabbing LUZ by her arm and dragging her out of her bedroom and into the living room.

33.     The police officer dragging LUZ exclaimed, "Make way for the drug addict!"

34.     In the living room, the police officers roughly attempted to handcuff LUZ behind her back causing her severe pain because her arms had a limited range of motion due to the car accident she had been in.

35.     The police officers eventually used two sets of linked handcuffs to handcuff LUZ.

36.     LUZ was then made to sit on the living room couch.

37.     SEBASTIAN and PABLO were asleep in the second bedroom when they were awoken by loud banging and crashing sounds caused by police officers breaking into the Webster Avenue Apartment.

38.     SEBASTIAN and PABLO were extremely frightened and jumped out of their beds.

39.     Approximately four police officers violently burst into the room, pointing guns and flashlights at SEBASTIAN and PABLO, and screamed at them to "get on the fucking ground."

40.     On information and belief, one or more of the Individual Defendants were among these police officers.

41.     SEBASTIAN and PABLO complied with the police officers' command

42.     SEBASTIAN and PABLO were immediately arrested by being roughly handcuffed behind their backs while they lay face-down on the ground.

43.     Police officers then grabbed PABLO, lifted him off the floor, forced him into the living room, and made him sit on the couch.

44.     The police officers violently turned SEBASTIAN over and forced him against a bureau.

45.     One of the police officers asked SEBASTIAN if he knew why the police were at the apartment.

46.     SEBASTIAN asked the police officer what he meant.

47.     The police officer responded by demanding SEBASTIAN tell them where the drugs were.

48.     SEBASTIAN did not know what the police officer was talking about.

49.     Police officers then grabbed SEBASTIAN, lifted him off the floor, forced him into the living room, and made him sit on the couch.

50.     DEBORAH ARBELAEZ was sleeping in the third bedroom when two police officers burst into her room, pointing guns and flashlights at her, and yelling for her to "get the fuck on the floor."

51.     On information and belief, one or more of the Individual Defendants were among these police officers.

52.     DEBORAH, who was wearing only a tank-top at the time, was terrified by the police officers' violent entry and fell out of her bed and on to the floor.

53.     The police officers leered at DEBORAH and told her to "put on your fucking underwear."

54.     DEBORAH complied while crying uncontrollably.

55.     DEBORAH was then immediately arrested by being roughly handcuffed with her hands behind her back.

56.     DEBORAH asked the officers what was happening and if her family was alright.

57.     The police officers did not respond by demanding to know where drugs were.

58.     DEBORAH told the police officers she did not know what they were talking about.

59.     DEBORAH was then forced to go into the living room and made to sit on the couch with her mother and brothers.

60.     Police officers told PLAINTIFFS "now we can be nice."

61.     The police officers demanded that PLAINTIFFS tell them where the drugs were.

62.     PLAINTIFFS responded that they did not know what the police were talking about.

63.     The police threatened to start "breaking shit" if PLAINTIFFS did not tell them where the drugs were.

64.     PLAINTIFFS again told the police officers that they did not know what they were talking about.

65.     Police officers began to destructively search the apartment.

66.     While they destructively searched the apartment, the police officers made comments, such as "Who would live in a piece of shit house like this? You people live like pigs!"

67.     At one point, SEBASTIAN asked the police officers if they had a warrant.

68.     The police officers responded by telling SEBASTIAN to "Shut the fuck up!" We don't work on your time; we work on our time."

69.     Two of the police officers that had arrested DEBORAH smirked at her and asked her how it felt to sleep naked.

70.     One of the police officers told DEBORAH that she should find better company than the "trash" she was hanging out with.

71.     One of the police officers asked LUZ where her husband was and joked to another police officer that, "She must be the first whore in the neighborhood that doesn't have a husband."

72.     LUZ was terrified, upset, and visibly ill from the way the police officers were treating her and her family.

73.     LUZ ,visibly pale and shaking, feared she was undergoing an epileptic episode

74.     SEBASTIAN, also afraid his mother was going to have an epileptic seizure, told the police officers that LUZ needed her medicine.

75.     The police officers responded by laughing and asking if she needed her "methadone."

76.     Another police officer responded, "She's a crackhead, right?"

77.     SEBASTIAN told the police officers that his mother was epileptic and that he was afraid she was going to have a seizure.

78.     The police officers responded, "She can wait."

79.     One of the police officers eventually obtained LUZ's seizure medicine.

80.     Instead of giving the seizure medicine to LUZ, he placed it on the coffee table where LUZ, who was still handcuffed, was unable to reach it.

81.     The police officers continued to joke that LUZ looked like a drug addict while LUZ's children pleaded for the police officers to allow her to take her seizure medicine.

82.     LUZ began to shake so violently that she started falling off of the couch.

83.     One of the police officers said, "Better give the meth-head her medication."

84.     The police officers finally allowed LUZ to take her seizure medicine.

85.     Police officers took SEBASTIAN off of the couch and brought him into his bedroom.

86.     The bedroom had been ransacked.

87.     The police officers had removed PABLO's and SEBASTIAN's clothes from the closet and bureaus, piled them in the middle of the floor, and ruined them by pouring a box of cornstarch and a bottle of bleach over them.

88.     SEBASTIAN was then subjected to a strip search.

89.     SEBASTIAN was made to drop his underwear, squat and cough.

90.     Because there were no curtains on the window, anyone looking from outside the ground floor bedroom window was able to see SEBASTIAN being strip searched.

91.     After SEBASTIAN had been strip searched, Detective LOPEZ entered the bedroom, waved papers in his face, and told SEBASTIAN he must be the "troubled one."

92.     Detective LOPEZ told SEBASTIAN that he knew why the police were there – because they were selling drugs out of their apartment.

93.     Detective LOPEZ told SEBASTIAN that she had pictures and videos of drug buyers entering and leaving their apartment.

94.     SEABASTIAN told Detective LOPEZ that neither he nor anyone else in his family sold drugs.

95.     Detective LOPEZ asked SEBASTIAN if he had noticed that she was the only police officer of color at the apartment and claimed she wanted to help SEBASTIAN.

96.     Detective LOPEZ asked SEBASTIAN if he thought "the white boys give a fuck about you?"

97.     SEABASTIAN told Detective LOPEZ that neither he nor anyone else in his family sold drugs.

98.     Detective LOPEZ then questioned SEBASTIAN about drugs and people from the neighborhood.

99.     SEBASTIAN told Detective LOPEZ he did not know what she was talking about.

100.    The police officers eventually returned SEBASTIAN to the living room and made him sit on the couch.

101.    Police officers then took PABLO into the same bedroom and subjected him to a strip search.

102.    The police officers commanded PABLO to remove his shirt, drop his underpants, squat, and cough.

103.    PABLO ARBELAEZ complied with the police officers' orders.

104.    Because the police officers had ripped the curtains off of the windows while searching the bedroom, PABLO ARBELAEZ was visible to anyone looking from outside the ground floor bedroom window.

105.    Detective LOPEZ entered the bedroom and told PABLO they knew he had drugs and to tell them where the drugs were.

106.    PABLO told the Detective LOPEZ that he did not know what she was talking about.

107.    Detective LOPEZ told PABLO that she was his friend, that she looked just like him, and that she would help him if he told her where drugs were.

108.    Detective LOPEZ told PABLO that she knew he associated with drug dealers in the neighborhood.

109.   PABLO told Detective LOPEZ that his family did not sell drugs, that he worked and went to school, that he normally lived at his school at the State University of New York at Purchase, and that he was only home for a break.

110.   The police officers eventually returned PABLO to the living room and made him sit on the couch.

111.   Police officers then took LUZ into her bedroom and told her to put on pants.

112.   Detective LOPEZ demanded that LUZ tell her where drugs were.

113.   LUZ responded that she did not know anything about drugs and asked why the police had arrested her children.

114.   Detective LOPEZ responded that her children associated with bad people, but that she would help LUZ out if LUZ told her where she could find some drugs.

115.   LUZ told Detective LOPEZ that she did not know what she was talking about.

116.   The police officers eventually returned LUZ to the living room and made her sit on the couch.

117.   Police officers then took DEBORAH into her bedroom and began asking her questions.

118.   Detective LOPEZ told DEBORAH that she was there to help her and that DEBORAH should tell her where the drugs were.

119.   Detective LOPEZ told DEBORAH that she did not know who her brothers really were, that her family was bad, and demanded that she tell her where the drugs were.

120.   DEBORAH told Detective LOPEZ that she did not know what she talking about.

121.   The police officers eventually returned DEBORAH to the living room and made her sit on the couch.

122.    After having been held in custody for approximately two hours, on information and belief, one or more of the Individual Defendants removed the handcuffs off of DEBORAH ARBELAEZ.

123.    On information and belief, one or more of the Individual Defendants took LUZ, SEBASTIAN, and PABLO ARBELAEZ, still handcuffed, out of the apartment and confined them in a police van.

124.    On information and belief, one or more of the Individual Defendants drove the van containing LUZ, SEBASTIAN, and PABLO ARBELAEZ, while they were still handcuffed, to location of other raids, after which additional arrestees were put into the police vehicle with them.

125.    The van was driven very erratically.  Because they were not secured in the van and, being handcuffed, unable to secure themselves, LUZ, SEBASTIAN, and PABLO were violently jostled and thrown about for much of the time they were confined inside the police van.

126.    Because LUZ ARBELAEZ was sick, weak, and physically suffering from previously having been hit by a car SEBASTIAN and PABLO did their best to secure LUZ by sitting on either side of her.

127.    LUZ, SEBASTIAN, and PABLO were eventually taken to the NYPD's 48th Precinct.

128.    LUZ, SEBASTIAN, and PABLO were falsely charged with Criminal use of drug paraphernalia in the second degree (N.Y.P.L. 220.50 (03)) and Criminal possession of a controlled substance in the seventh degree (N.Y.P.L. 220.03).

129.    Detective LOPEZ falsely claimed that LUZ, SEBASTIAN, and PABLO ARBELAEZ were found to be in possession of a quantity of a controlled substance (cocaine) and

a scale.

130.    Upon information and belief, no evidence of illegal activity was recovered as a result of the police officers destructive and unlawful search of the Webster Avenue Apartment.

131.    LUZ, SEBASTIAN, and PABLO ARBELAEZ were searched, fingerprinted, photographed, and then confined to jail cells at the 48th precinct.

132.    After being confined at the 48th Precinct for several hours, LUZ was released from custody with a Desk Appearance Ticket.

133.    SEBASTIAN and PABLO were eventually transported from the 48th Precinct to Bronx Central Booking where they were further subjected to searches and processing.

134.    SEBASTIAN and PABLO were eventually arraigned and released after having spent approximately twenty (20) hours in custody.

135.    The criminal charges against LUZ were eventually dismissed pursuant to N.Y.C.P.L.  170.55 on October 4, 2016.

136.    The criminal charges against SEBASTIAN and PABLO were eventually dismissed.

137.    At all times relevant herein, the Individual Defendant police officers were engaged in a joint venture.  The Individual Defendant police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

138.    Defendants' conduct caused PLAINTIFFS to suffer unlawful arrest, detention and imprisonment, loss of liberty, unreasonable search and seizure, damage or loss of property, emotional and psychological pain, embarrassment, humiliation, harm to their reputation,

deprived of other constitutional rights, and financial loss, including loss of income, legal fees, costs and expenses.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Right)**
**Against the Individual Defendants**

139.     PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

140.     In committing the acts and omissions complained of herein, defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES acted under color of state law to deprive PLAINTIFFS of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

  a.   freedom from unreasonable search and seizure of their persons and property;

  b.   freedom from arrest without probable cause;

  c.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

  d.   freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

  e.   freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

  f.   freedom from deprivation of liberty without due process of law.

141.     In committing the acts and omissions complained of herein, defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

142.   As a direct and proximate result of defendant NYPD police officers LOPEZ's, BOYLAN's, LIPINSKI's, WINROW's, and DOES' deprivation of PLAINTIFFS' constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

143.   The unlawful conduct of defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CAUSE OF ACTION
**(Violations of the New York State Constitution)**
**Against the Individual Defendants**

144.   PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth rth herein.

145.   Defendants' conduct breached the protections guaranteed to PLAINTIFFS by the New York State Constitution including, but not limited to, Article I, §§ 6 and 12, and including the following rights:

   a.   freedom from unreasonable search and seizure of their persons and property;

   b.   freedom from arrest without probable cause;

   c.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

   d.   freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

   e.   freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

   f.   freedom from deprivation of liberty without due process of law.

146.   The deprivation of PLAINTIFFS' rights under the New York State Constitution

resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
**(False Imprisonment)**
**Against the Individual Defendants**

147.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

148.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES, through the foregoing acts, caused PLAINTIFFS to be wrongfully detained without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent.

149.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
**(Malicious Prosecution)**
**Against the Individual Defendants**

150.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

151.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against Plaintiffs SEBASTIAN ARBELAEZ and PABLO ARBELAEZ, which ended in their favor, without probable cause to believe Plaintiffs SEBASTIAN ARBELAEZ and PABLO ARBELAEZ were guilty of the crimes charged or any crimes.

152.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### (Assault and Battery)
### Against the Individual Defendants

153.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

154.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFFS causing them injury.

155.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFFS' rights, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### (Trespass)
### Against the Individual Defendants

156.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

157.    On information and belief, the Individual Defendants, by their aforementioned acts, did intentionally, willfully, and knowingly enter the premises at the Webster Avenue Apartment on May 29, 2015.

158.    On information and belief, the Individual Defendants' entry on each date was wrongful in that it was without consent or legal justification.

159.    On information and belief, the Individual Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights.

160.    As a result, plaintiffs suffered the injuries and damages set forth above.

## SEVENTH CAUSE OF ACTION
### (Infliction of Emotional Distress)
### Against the Individual Defendants

161.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

162.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, recklessly, and/or negligently caused PLAINTIFFS to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

163.    Defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

## EIGHTH CAUSE OF ACTION
### (Negligence of the Individual Defendants)
### Against the Individual Defendants

164.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

165.    On information and belief, the Individual Defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

      a.   failed to perform their duties as a reasonably prudent and careful police officer or

supervisor would have done under similar circumstances;

    b.   carelessly and recklessly entered PLAINTIFFS' home;

    c.   carelessly and recklessly seized and detained PLAINTIFFS;

    d.   carelessly and recklessly damaged PLAINTIFFS' property; and

    e.   carelessly and recklessly arrested and detained PLAINTIFFS without a warrant or probable cause.

166.    The negligent actions of defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES directly and proximately caused plaintiffs' injuries and damages set forth above.


### SEVENTH CAUSE OF ACTION
#### (*Respondeat Superior*)
#### Against Defendant CITY OF NEW YORK

167.    PLAINTIFFS repeat and re-allege each and every allegation above as if fully set forth herein.

168.    At all relevant times, defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES were employees of the City and were acting within the scope of their employment.

169.    The CITY is therefore vicariously liable under the common law doctrine of *respondeat superior* for the actions of defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES set forth herein.

**DEMAND FOR RELIEF**

**WHEREFORE**, PLAINTIFFS SEBASTIAN ARBELAEZ, LUZ ARBELAEZ, DEBORAR ARBELAEZ, and PABLO ARBELAEZ demand the following relief against the defendants, jointly and severally:

(a)  compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)  punitive damages from defendant NYPD police officers LOPEZ, BOYLAN, LIPINSKI, WINROW, and DOES to the extent allowable by law;

(c)  attorneys' fees;

(d)  the costs and disbursements of this action;

(e)  interest; and

(f)  such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 28, 2017

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 2600
New York, New York 10016
(212) 490-0400

  /s/Marc A. Cannan
Marc A. Cannan (MC0513)
*Attorneys for Plaintiffs Sebastian Arbelaez, Luz Arbelaez, Deborah Arbelaez, and Pablo Arbelaez*