UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
SEBASTIAN ARBELAEZ, et al., :
:
Plaintiffs, :
: 17-CV-6543 (JMF)
-v- :
: OPINION AND ORDER
CITY OF NEW YORK, et al., :
:
Defendants. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this action, brought pursuant to 42 U.S.C. § 1983 and New York law, Luz Arbelaez and three of her children — Sebastian, Deborah, and Pablo Arbelaez[1] — bring claims against the City of New York, several officers from the New York City Police Department ("NYPD"), and an unidentified confidential informant (the "CI") for injuries sustained when NYPD officers executed a search warrant in Luz's apartment. *See* ECF No. 46 ("Amended Compl."). In this Opinion, the Court addresses two questions that are collateral to the merits of Plaintiffs' claims: whether Plaintiffs are entitled to discover the CI's identity for purposes of serving him or her with the summons and Amended Complaint; and, if not, whether Plaintiffs may nevertheless depose the CI under conditions designed to protect his or her identity. For the reasons that follow, the Court concludes Plaintiffs are not entitled to discovery of the CI's identity, but may depose the CI under conditions designed to protect his or her identity from disclosure.

---

[1]  Because Plaintiffs all share the same last name, the Court follows the Amended Complaint and, for clarity's sake, refers to each Plaintiff by his or her first name.

## BACKGROUND

Luz Arbelaez lives in a three-bedroom apartment on Webster Avenue in the Bronx. Amended Compl. ¶ 23. During the period relevant to this case, three of her children — Plaintiffs Sebastian, Deborah, and Pablo — lived there as well. *Id.* ¶ 26. Plaintiffs allege that they were mistreated by certain NYPD officers in retaliation for, among other things, speaking out against what they believed to be police misconduct in their neighborhood. Amended Compl. ¶¶ 40-87. Most relevant for present purposes, they allege that one of the officers — Detective Doris Lopez, a defendant here — conspired with the CI to obtain a warrant to search Luz's home on the false premise that the CI had purchased crack cocaine in that apartment. *Id.* ¶¶ 88-98. On May 29, 2015, NYPD officers raided Luz's apartment pursuant to that search warrant, handcuffed all four Plaintiffs, destroyed property, strip-searched Sebastian and Pablo, and eventually took Luz, Sebastian, and Pablo into custody. *Id.* ¶¶ 99-206. Luz, Sebastian, and Pablo were initially charged with state drug offenses based on Detective Lopez's claim that they had been found in possession of cocaine and a scale — a claim that Plaintiffs allege was false. *Id.* ¶¶ 207-08. Luz was released after several hours; Sebastian and Pablo were arraigned and released after approximately twenty hours. *Id.* ¶¶ 212-14. About a year and a half after the search, all charges against all Plaintiffs were dismissed. *Id.* ¶¶ 221-23. In the meantime, two men who lived in the apartment directly above Luz and her children were charged with a variety of drug and other criminal offenses; they later pleaded guilty. *Id.* ¶¶ 215-19.

Plaintiffs brought this action in 2017 against the City and three NYPD officers seeking damages for violations of their federal and state constitutional rights, as well as several common-law torts. ECF No. 1. In 2018, Plaintiffs filed an Amended Complaint adding the CI as a defendant along with a Section 1983 claim for conspiracy to violate their federal rights.

Amended Compl. ¶¶ 230-34.  Plaintiffs sought leave to serve the Amended Complaint on the CI by delivery to the New York City Law Department.  ECF No. 72.  In response, Defendants protested that (1) the Law Department did not represent the CI; (2) they were not aware of any authority permitting a confidential informant to be sued in an action such as this one or any examples of confidential informants being sued; and (3) in any event, they did not believe any claims against the CI would survive a motion to dismiss.  *See* ECF No. 73.  On July 12, 2018, then-District Judge Richard J. Sullivan — to whom this case was then assigned — "made a sua sponte motion to dismiss" the claims against the CI, and invited Plaintiffs to submit a letter "informing the Court as to whether and how they wish to respond to the Court's motion."  ECF Minute Entry of July 12, 2018 ("Sua Sponte Order").  At Plaintiffs' request, Judge Sullivan then held that motion in abeyance pending discovery with respect to the other Defendants.  ECF No. 80.

Shortly thereafter, Judge Sullivan separately held that "the law enforcement privilege applies to all documents and portions of documents that tend to reveal the identity of" the CI and that "Plaintiffs [had] failed to successfully rebut the presumption against lifting the privilege."  ECF No. 81 ("Privilege Order"), at 7.  On October 29, 2018, following Judge Sullivan's elevation to the Court of Appeals, this case was reassigned to the undersigned.  Thereafter, the Court set deadlines for the completion of discovery and for Plaintiffs to seek leave either to amend their complaint to add the CI as a defendant or, in the alternative, to reopen discovery for the limited purpose of deposing the CI.  *See* ECF No. 126.  Instead of seeking leave to amend their complaint, Plaintiffs now move for reconsideration of Judge Sullivan's "motion" dismissing the CI as a defendant in their operative Amended Complaint and seek disclosure of the CI's identity for the purpose of serving that Amended Complaint on him or her and then taking his or

3

her deposition. *See* ECF No. 138 ("Pls.' Mem."). In the alternative, Plaintiffs seek leave to depose the CI under conditions that would protect any information that could be used to identify the CI. *Id.* at 25-26; ECF No. 153 ("Reply"), at 10-11.

## THE INFORMER'S PRIVILEGE

The "law enforcement privilege" attaches to — and often protects from disclosure — "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel, information that would undermine the privacy of individuals involved in an investigation, or information that would seriously impair the ability of a law enforcement agency to conduct future investigations." *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (citations and internal quotation marks omitted). "[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege indeed applies . . . ." *In re the City of New York*, 607 F.3d at 948. Where the privilege does apply, there is a "strong presumption" against lifting it. *Id.* "To rebut that strong presumption, the party seeking disclosure bears the burden of showing (1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information." *Id.* (citations and internal quotation marks omitted). Even then, a court "must . . . weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required." *Id.*

One species of the law enforcement privilege, the "informer's privilege," describes "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v.*

4

*United States*, 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* Although there is some "authority for the proposition that the strength of the privilege is greater in civil litigation than in criminal . . . the privilege is not absolute in either." *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977). "The scope of the privilege is limited by its underlying purpose." *Roviaro*, 353 U.S. at 60. It is thus "cabined by three limitations. First, it protects only the identity of the informant — not the content of the informant's communications. Second, the privilege has no application when the informer's identity is disclosed to those who would have cause to resent the communication. Third, it is a qualified privilege that must yield to fairness when the information sought is relevant and helpful to the defense." *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11-CV-3543 (WHP), 2014 WL 2116147, at *3 (S.D.N.Y. May 14, 2014) (citations and internal quotation marks omitted).

## DISCUSSION

Significantly, Plaintiffs do not challenge — and the Court sees no basis to revisit — Judge Sullivan's holding that the CI's identity and any information that would tend to reveal it are protected by the informer's privilege. Instead, the question here is whether Plaintiffs can now demonstrate a sufficiently "compelling need" to overcome the privilege. Plaintiffs principal, if not sole, argument on that score is that the CI's presence in the case is "essential to a fair determination of [their] conspiracy claim." Pls.' Mem. 18. According to Plaintiffs, if the CI is not named as a defendant, their "conspiracy claim will fail as a matter of law under the intracorporate conspiracy doctrine," *id.* at 19, "which provides that officers, agents and

5

employees of a single corporate entity," such as the NYPD, "are legally incapable of conspiring together," *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018) (internal quotation marks omitted). Plaintiffs argue, in other words, that the CI is "a necessary party who is crucial to [their] being able to establish an unlawful conspiracy." Pls.' Mem. 19.

Plaintiffs are wrong. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Critically, however, the law does not require that a plaintiff sue all members of a conspiracy in order to maintain a suit against any of them. *See, e.g.*, *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 537 (S.D.N.Y. 2004), *aff'd in part and vacated in part on other grounds sub nom. Lesavoy v. Gattullo-Wilson*, 170 F. App'x 721 (2d Cir. 2006); *see also, e.g.*, *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1251 (10th Cir. 1988) ("It is axiomatic that since coconspirators are jointly and severally liable for all damages caused by a conspiracy, a private plaintiff need not sue all the conspirators, but may choose to proceed against any one or more of them." (internal quotation marks omitted)). Indeed, holding conspirators individually liable for their co-conspirators' acts is the whole point of conspiracy law. Of course, without the CI's participation in the case, Plaintiffs may face problems of proof. But, as the Court will go on to discuss, Plaintiffs' needs in that regard are for evidence that may be known to the CI — that is, his or her testimony — not for the CI's identity, much less his or her presence as a party to this action.

Having failed to demonstrate any need, let alone a "compelling need," for the CI's identity, Plaintiffs' motion for reconsideration is denied to the extent that they seek that information.[2]

In the Court's view, however, the informant's privilege alone does not provide a basis to dismiss the claims against the CI. Perhaps because of Judge Sullivan's Sua Sponte Order, the parties at times frame the question here as whether, in light of the informer's privilege, Plaintiffs' claims against the CI may proceed at all. *See, e.g.*, Pls.' Mem. 22 (arguing that the CI "should remain a defendant in this action"); ECF No. 145 ("Defs.' Mem."), at 7 (arguing that the Court should "disallow the CI from being named as a defendant in this lawsuit"). But, as its name suggests, the informer's privilege is an *evidentiary* privilege — not an *immunity* from suit or liability. To be sure, if a plaintiff cannot and does not learn the identity of a confidential informant, that plaintiff will presumably be unable to serve the confidential informant within the time limits set by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 4(m), and the statute of limitations on any claims against the confidential informant may run, *see* ECF No. 80 (explaining why, if Plaintiffs are not able to serve the CI in this action, the statute of limitations will run with respect to claims against him or her). But the practical problems inherent in suing an unknown defendant whose identity is protected from disclosure by an evidentiary privilege do not provide a basis to reverse-engineer a novel substantive immunity from suit.[3] Thus, the Court

---

[2] As a fallback, Plaintiffs suggest that the CI's actual identity could remain under seal, with the case proceeding against him or her pseudonymously. Pls.' Mem. 22-25. That suggestion raises a host of legal and practical problems. *See, e.g.*, *Kirkland v. City of New York*, No. 06-CV-0331 (NG) (CLP), 2007 WL 1541367, at *11-12 (E.D.N.Y. May 25, 2007). Moreover, to the extent that it would require or involve disclosure of the CI's identity to Plaintiffs alone (so that they could properly name the CI, serve him or her with the Amended Complaint, and so on), it too would run afoul of the informant's privilege.

[3] For instance, if a plaintiff were able, through his or her own due diligence, to identify and serve a confidential informant within the time limits set by the Federal Rules of Civil Procedure, the informant's privilege would presumably pose no obstacle to the plaintiff's claims against the confidential informant. To the extent that the court in *Kirkland* — which denied leave to amend

7

declines to dismiss the CI as a defendant on the basis of the informant's privilege alone; instead, it will order Plaintiffs to show cause why those claims should not be dismissed for failure to serve the CI in a timely fashion. *See* Fed. R. Civ. P. 4(m). To the extent the Sua Sponte Order did otherwise, Plaintiffs' motion for reconsideration is granted.

That leaves Plaintiffs' final request: to depose the CI. *See* Pls.' Mem. 25-26. Here, the analysis changes somewhat because it is well established that the informer's privilege "protects only the identity of the informant — not the content of the informant's communications." *Parnon Energy Inc.*, 2014 WL 2116147, at *3. Defendants assert that "subjecting the CI to a deposition would, of course, reveal his or her identity," Defs.' Mem. 11, and submit a declaration from an NYPD Inspector to the same effect, *see* ECF No. 152-1. In the Court's view, however, such conclusory assertions are insufficient to carry Defendants' burden of showing that the informer's privilege bars a deposition altogether. Instead, the Court is confident that, through entry of a protective order, appropriate precautions could be taken to enable a deposition of the CI without revealing his or her identity. *See* Fed. R. Civ. P. 26(c)(1); *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973) (explaining that a district court may issue a protective order governing the "[c]ircumstances of a deposition," the "grant and nature" of which is "singularly within the discretion of the district court"). Such precautions might include, among other things, (1) allowing the CI to testify in a location and manner that would protect his or her identity; (2) limiting attendance at the deposition to counsel; (3) precluding any questions the answers to which could reveal the CI's identity; (4) conducting the deposition in the presence of the designated Magistrate Judge, who could rule on objections contemporaneously; and (5) sealing

---

a complaint to bring claims against a confidential informant as "futile," 2007 WL 1541367, at *12 — suggested otherwise, the Court declines to follow its decision.

the transcript of the deposition. *Cf., e.g.*, *Edwards v. City of New York*, No. 16-CV-9124 (PGG) (KNF), 2018 WL 1229706 (S.D.N.Y. Mar. 1, 2018); 16-CV-9124, ECF No. 49 (Mar. 9, 2018) (protective order); *Banno v. City of New York*, No. 06-CV-2270 (RJS) (S.D.N.Y.), ECF No. 67 (Feb. 11, 2009) (order permitting an undercover officer to appear for his or her deposition "in a modest disguise consisting of a mustache and wig"). With such limitations and precautions in place, a deposition of the CI would not run afoul of the informer's privilege.

That is not the end of the matter, however, because — even though Defendants do not directly raise the issue — deposing the CI would be appropriate only if it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The CI's testimony, however, is plainly relevant to the claims and defenses in this case because Plaintiffs' Section 1983 and state-law malicious prosecution claims require them to prove the absence of probable cause to search Luz's apartment. *See Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *see also* Reply 5-6 (explaining how the CI's testimony would be relevant to the legality of the search); Amended Compl. ¶¶ 225-34, 241-43. "Plaintiffs cannot even attempt to make the required . . . showing without learning through discovery what the informant said to the affiant and what information the affiant relied on in requesting the search warrant." *Ayala v. City of New York*, No. 04-CV-1102 (DC), 2004 WL 2914085, at *2 (S.D.N.Y. Dec. 16, 2004) (Chin, J.). The question of proportionality is closer, if only because the policies behind the informer's privilege counsel in favor of denying leave to depose a confidential informant where a plaintiff can obtain the relevant information through other means. Here, however, discovery is otherwise over and, construing the evidence in the light most favorable to Plaintiffs, notable gaps and inconsistencies in evidence remain. *See* Reply 5. Thus, the Court concludes that a deposition of the CI would be proportional to the needs of the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration of Judge Sullivan's order dismissing the CI as a defendant is GRANTED in part and DENIED in part, and discovery is reopened for the sole purpose of deposing the CI, subject to entry of a protective order with limitations and precautions sufficient to protect the CI's identity from disclosure.

The parties shall promptly confer and, **within two weeks of the date of this Opinion and Order**, submit either (1) an agreed-upon proposed protective order or (2) competing proposed orders and letter briefs in support of those proposed orders. Separately, **within one week of the date of this Opinion and Order**, Plaintiffs shall show cause why their claims against the CI should not be dismissed for failure to serve the summons and complaint within the ninety days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Court is directed to terminate Docket No. 137.

SO ORDERED.

Dated: October 31, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge